IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CANDIDO SALVA-MORALES

Plaintiff

vs                                                    CIVIL 12-1969CCC

UNITED STATES OF AMERICA

Defendant

## OPINION AND ORDER

Before the Court is the pro se Motion under 28 U.S.C. § 2255 filed on November 28, 2012 by petitioner Cándido Salvá-Morales (hereinafter "Petitioner" or "Salvá-Morales") (**docket entry 1**).  He also filed a Memorandum of Law on February 14, 2013 (docket entry 2).  In addition, Petitioner, no longer appearing pro se, filed on October 3, 2013 a Supplemental Petition for Relief under 28 U.S.C. § 2255 (**docket entry 8**).  For the reasons discussed below, the Motion as well as the Supplemental Petition are DENIED.

## I.    BACKGROUND

Petitioner Salvá-Morales was charged in a one count Indictment with violations to 18 U.S.C. § 2252(a)(4)(B), knowingly possessing one or more matters which contained visual depictions of minors engaging in sexually explicit conduct, that such visual depictions had been mailed, shipped and transported in interstate and foreign commerce, and were produced using material which had been mailed and so shipped and transported, by any means including by computer, and the producing of such visual depictions involved the use of a minor engaging in sexually explicit conduct; that Cándido Salvá Morales knowingly possessed in his computer images, both still images and movie files, of actual minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), such as, visual depictions of the lascivious exhibition of the pubic areas of female and male minors and simulated and actual sexual intercourse between female and male minors and between minors and adults.  (Docket entry 1 in Cr. No. 07-140CCC).

CIVIL 12-1969CCC                                2

The jury trial began on August 18, 2008, with the selection of the jury (docket entry 72 in Cr. No. 07-140CCC).  On September 5, 2008, the jury returned a verdict of guilty as to Salvá-Morales in Count One of the Indictment (docket entry 92 in Cr. No. 07-140CCC). Salvá-Morales was sentenced to a term of imprisonment of eighty four (84) months, a supervised release term of twenty (20)years; and a special monetary assessment of one hundred dollars ($100.00) (docket entry 115 in Cr. No. 07-140CCC).  On March 9. 2009, he filed a Notice of Appeal and on October 31, 2011 the First Circuit Court of Appeals issued its  Judgment  affirming  his  conviction  and  sentence  (docket  entry  131  in  Cr. No. 07-140CCC).  No certiorari was filed from said judgment.  Salvá-Morales petition for relief pursuant to Section 2255 was timely filed on November 28, 2012 (docket entry 1).


II.    **DISCUSSION**

Petitioner raises two claims of ineffective assistance of counsel against both trial and appellate counsel.

1.    Ineffective assistance for failing to object to the removal of a person from the courtroom during his trial.

2.    Counsel was ineffective in failing to object to the showing of child pornography evidence to the jury, without prior screening by the court in order to determine whether or not its prejudicial content outweighed its probative value.

A.    **Claims of ineffective assistance of counsel**.

To establish ineffective assistance of counsel petitioner must show that:

1.    his attorney's performance was deficient, and

2.    the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

In  order  to  establish  deficiency,  a  defendant  must  establish  that  counsel's performance  "fell  below  an  objective  standard  of  reasonableness  under  prevailing

CIVIL 12-1969CCC                    3

professional norms." Strickland, 466 U.S. at 688.  Under Strickland counsel is presumed to have acted within the range of "reasonable professional assistance," and it is defendant who bears the burden of "overcoming the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  However, this assessment "must be a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or successful defense.'"   Moreno-Espada v. United States, 666 F.3d 60, 64 (1st Cir. 2012), quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994).

A claim of ineffective assistance of counsel "requires a court to first assess whether 'counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky , 130 S.Ct. 1473, 1482 (2010).  It is pellucid that Petitioner was obligated to show both counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from it.  Strickland, 466 U.S. at 687.  See also López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).  He must comply with these two prongs as to each instance in which he claims ineffective assistance of counsel.  Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1992).  The "range of reasonable professional assistance" is wide.  See Strickland, 466 U.S. at 689.  Therefore, the Supreme Court has stated that, "judicial scrutiny of counsel's performance must be highly deferential."  See Strickland, 466 U.S. at 689.

Under Strickland, movant is required to identify acts or omissions by counsel which are outside the wide range of professional competent assistance and the harm caused.

CIVIL 12-1969CCC                                4

Furthermore, "a defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Moreno-Espada v. United States, 666 F.3d 60, 64 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

**B.     Ineffective assistance of counsel for failing to object to the prejudicial court's denial of a public trial does not prosper.**

Contrary to petitioner's contention, his trial counsel did raise an objection to the removal of a friend of his who was also a regular juror's neighbor. See Trial Transcript dated September 2, 2008 (TR.) at pp. 108, 109. Salvá-Morales did not raise on appeal any error related to the Court's order of removal after hearing his attorney's arguments during a trial recess. Accordingly, on this issue the ineffective assistance of counsel claim is circumscribed to ineffective assistance by appellate counsel.

Claims of ineffective assistance of appellate counsel are measured under the Strickland standard. Evitts v. Lucy, 469 U.S. 287 (1985). Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits. Lattimore v. Dubois, 311 F.3d 46 (1st Cir. 2002).

Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259 at page 288 (2000). To overcome the presumption of competence of appellate counsel, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. Salvá-Morales has not made such a showing.

The issue of the removal of a spectator from the courtroom during the last day of trial arose on September 2, 2008, at pages 97-117 of the trial transcript. Juror number 20 informed the Court Security Officer that, while he was having lunch in the court cafeteria, he identified a neighbor of his whom he has known for the past 25 years having lunch with the defendant (petitioner in this case). TR, pages 96-97. This led to an in-chambers inquiry during which the Court Security Officer, the juror and the visitor were interviewed. The juror

CIVIL 12-1969CCC                                   5

was the first one interviewed.  The following relevant information was provided by juror Roberto Colón-Vázquez: that he saw a pastor, known to him as "Noble," during lunch with the defendant who has been his neighbor for about 25 years in the same street at Siena 303, Urb. College Park, about 7 houses down; that he is still his neighbor; that Noble's daughter Rebecca babysat for his 3 children for a period of 2 or 3 years (TR., pp. 98-100); that he was having lunch with another juror at the time when he saw Noble, that the juror asked him "You're looking at the defendant?"  to which he responded "No, no. I'm looking at the guy just aside, that he is a next-door neighbor."  (TR. p. 102, lines 1-11).  Juror Colón informed that he was "in the cafeteria 30-35 minutes while they were having lunch," referring to the defendant and the pastor.  TR, p. 103.  The Court asked: "the fact that you have seen your neighbor and the defendant together, does that in any way affect you," to which the juror responded: "I don't know if he is going to be a witness, he will declare on behalf of the defendant, so I don't know if that will be a conflict.  I want to be honest.  **But it depends on what he declares or something but it's different when you know somebody.  I don't know, it's a very difficult case for me to be just aside of him**.  . . . **Just close by or having lunch together the way that I just saw them.  But my concern is if he is a witness.**" (TR. p. 100) (emphasis ours).

Immediately after this, the spectator whose first name is Noble and last name is Vater was interviewed.  The following are relevant excerpts of his interview: He is a pastor of a church attended for the past year by petitioner Cándido Salvá, with whom he had lunch at the courthouse cafeteria together with defendant's father and aunt that day. TR, pp. 104-105.  He informed that he had entered the courtroom "about ten minutes before the lunch recess."  TR, p. 104.  To the Court's question "Is there anyone in this jury that you know?", he answered that since he "just glanced briefly and without looking closely or having the names," he could not tell "if he knew anyone on the jury."  TR., p. 106.  Asked if he had seen anyone while having lunch that day with the defendant who was involved in the case

CIVIL 12-1969CCC                              6

in any capacity, he only acknowledged seeing "the lawyer."  TR., p. 106.  The Court then

asked him point-blank if he knew a person by the juror's name Roberto Colón-Velázquez,

to which he answered that  "The name doesn't ring a bell with me, but that doesn't mean that

I have never met somebody named Roberto Colón-Velázquez."  TR, p. 107.  Immediately

thereafter, upon inquiry by the Court he informed that he lived at Calle Siena in College

Park.  He was then asked "you don't know anybody that lives at Calle Siena by that name?"

His response: "No, that doesn't mean that there isn't somebody I know that has that name,

but I don't recognize that name."  Id.  At that point, the Court excused Mr. Noble Vater, and

the defendant's trial attorney stated he "did not see any basis for any possible conflict," to

which the Court commented:

> THE COURT: Well, I will tell you, I have a conflict.  I have a concern because
> these two persons are close neighbors, seven houses down, same street, the
> juror and the person who just left, the pastor. And the pastor has said that he
> doesn't know anybody by that name. A person who has lived years in the
> same street, six or seven houses down, and he doesn't know anybody by that
> name? I ask you that. Common sense tells me that he should know that
> name.  And that leaves me with a concern that I don't know if there is
> something improper in his presence here, but I have grounds to believe that
> there may be, and that proximity, physical proximity between this juror and this
> pastor who just happened to arrive here the . . . last day of trial and doesn't
> know anything about who the jurors are or if there is a juror there that he
> knows . . . he wouldn't even acknowledge that he knows Colon Velasquez,
> that doesn't ring a bell.  You know, if we just leave it to see if something
> happens, we might never know if something does happen or not, and it's my
> duty to make sure that this is a fair trial to both sides, . . . it leaves me room
> for doubt that he should not know who his neighbor for the last 25 years,
> seven houses down from his, in the same street is.

TR, at pp. 108-109.

> THE COURT: I'm not here to pass judgment on this person, but there is
> sufficient data there to raise concerns about the motives that he may have in
> being here today, whether this is just casual or whether this was deliberate.
>
> MR. GONZALEZ: Remember that the juror only knows the pastor by his first
> name, Noble.
>
> THE COURT: But knows him and recognized him immediately and knows
> Mr. Noble's daughter and knows her by name also and he knows him by first
> name, Noble is his first name, Vater is his last name. He knows him on a first
> name basis.

CIVIL 12-1969CCC                              7

TR., p. 110.

In contrast to the juror who immediately acknowledged, after seeing Noble Vater at the cafeteria with defendant, that "Noble" has been his neighbor for the past 25 years, Mr. Vater gave evasive answers to the Court right from the start denying knowing the juror and at the same time averring that did not "mean that there [wa]sn't somebody [he] knew that has that name." His outright denial that he knew the juror who has lived in his same street, six houses down, when confronted with that fact, was viewed by the Court as an attempt to conceal his relationship with the juror.[1]

After the Court had expressed its concerns on the matter, Mr. Vater informed the Court Security Officer that he had something to say. The following dialogue ensued:

> MR. VATER:  I'm sorry. You asked if I know a Roberto Colon Velasquez, right?
>
> THE COURT: Yes.
>
> MR. VATER:  The Velasquez blew my mind. I know a Roberto Colon that lives about maybe seven or eight houses up. His wife's name is Lirio. They have three sons that my daughter has baby-sat four years ago. If he is here, I didn't see him or recognize him, but I do know a man named Roberto Colon who lives on Calle Sienna. Like I say, if he is here, if he is on the jurado, if he is in the building, I have not seen him or recognized him.
>
> THE COURT: Thank you, sir.
>
> MR. GONZALEZ:  Your Honor, can we inquire when was the last name time he saw Mr. Colon.
>
> MR. VATER: It hasn't -- probably with -- I wave to him all the time. He goes up and down the street. We spent a lot of time together. Not a lot of time, my kids baby-sat for his children. I have known the man a long time. I have lived 30 years in College Park and he probably has, too.

TR., p. 112, lines 5 through 23.

---

[1]Defense counsel initially raised that his client had no way of knowing the jurors' names, to which the Court responded that the names of the jurors are mentioned during special voir dire and the twelve regular jurors and the alternates chosen are each called by name when selected. TR., p. 111. This claim was also voiced initially by Mr. Noble Vater when he claimed during the Court interview that "without having the names" he could not tell if he knew anyone on the jury. TR., p. 106.

CIVIL 12-1969CCC                              8

> MS. HERNANDEZ: And what made you remember him just now?
>
> MR. VATER: You know, when you're 68, and I got to thinking, I kept thinking over, who could be Roberto Colon Velasquez? And then I took off the Velasquez, Roberto Colon. I thought, yes, Roberto Colon because my wife that passed away used to do a lot of work for his wife –
>
> THE COURT: What kind of work?
>
> MR. VATER: Typing work.
> THE COURT: Your wife did typing work for who?
>
> MR. VATER: For Lirio, his wife. And just the Velasquez, I have never heard that last name. He is Roberto Colon. And if you had said Roberto, maybe I would have thought sooner than the Colon because that also -- it just came back like that. I don't know if you have moments like that, but I have moments like that.
>
> MS. HERNANDEZ: You have had a relationship with this person for at least 25 years.
>
> MR. VATER: Oh, probably. Like I said, we have lived in College Park 30 years. His kids are in their 20s now. My daughter just used to baby-sit for them when they were little.

TR., p. 113, lines 3-23.

The Court mentioned the juror's first name Roberto and first surname Colón when it first asked Mr. Vater if he knew a person by such name who lived in his own street, Siena St. at College Park. His contention that had the Court "said Roberto," he would have remembered and that he had "moments like that," was a weak justification for his having denied a relationship that he ultimately had to acknowledge. It is not until the last moment that Mr. Vater acknowledged with regard to the juror that "we have lived in College Park thirty years," TR., p. 113, lines 21-21, and that not only were they neighbors but also that his wife did typing work for the juror's spouse and his daughter babysat for the juror's children.

The excerpts transcribed above reflect that spectator Noble Vater was the only person excluded from the trial which was at all times public and open to everyone including the defendant's relatives who remained in court. The public trial protection of the Sixth

CIVIL 12-1969CCC                                    9

Amendment was not violated in this case.  The purposes behind the right to a public trial, that is, to encourage witnesses to come forward, discourage perjury by witnesses, ensure that the judge and prosecutors perform their duties properly, and allow the public to observe that the accused is fairly dealt with and not unjustly condemned, essential to the Court's analysis in Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210 (1984), are not abridged when, as here, the trial remains open to the public to attend and the only person excluded was the spectator who gave deceptive answers to the Court regarding his relationship to a juror. These circumstances distinguish this case from Waller in which the Court found that the closure of the entire suppression hearing was "far more extensive than necessary;" Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721 (2010) and United States v. Agosto-Vega, 617 F.3d 541 (1st Cir. 2010), where it was found that it was error to close the courtroom as a matter of course.  The trial judge in the Superior Court of Dekalb County, Georgia in Presley and the undersigned in Agosto-Vega excluded the public from the jurors' voir dire "to fill the courtroom with potential jurors rather than spectators." Presley, 130 S.Ct. at p. 725. The Court in Presley acknowledged, however, that "there are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire." Id. In this case, the Court had a serious concern, initially due to the spectator's misleading answers regarding his knowing the juror, and, subsequently once it became known that they were neighbors and had been living next to each other for the past 25-30 years, that there was a risk of undue influence upon the juror. After the spectator misled the Court with respect to his long personal relationship with the juror, the concern grew that he was not present for a good purpose.  The factual circumstances before the Court at the time of the in-chambers inquiry led the undersigned to believe that there was a potential but real exposure to the juror being improperly influenced in the performance of his duties by the spectator during the critical final stages of the proceeding.  In balancing the interests, given the friendship that linked the spectator

CIVIL 12-1969CCC                              10

to both juror and defendant, the Court determined that to allow this person to remain, notwithstanding his coarse attempt to derail the inquiry as to the juror/spectator relationship would not only reward him for his conduct but, more importantly, it would leave the integrity of the trial process unprotected  against the threat posed by one whose entire behavior during the in-camera inquiry was dishonest.

As stated earlier, the error raised regarding the failure to object to the removal of the visitor as offensive to the Sixth Amendment applies only to appellate counsel for trial counsel argued and raised his objections at the trial level.  Due to the circumstances outlined above, the appellate counsel did not err in selecting other non-frivolous claims to maximize the likelihood of success of the appeal.  Accordingly, the Court finds that the first error imputed to appellate counsel of ineffective assistance lacks merit.

**C.     Ineffective assistance of counsel for failure to object to the showing of child pornography evidence to the jury without prior screening by the Court in order to determine whether or not its prejudicial content outweighed its probative value**.

Salvá-Morales' second allegation of ineffective assistance of counsel is to the effect that his trial attorney should have objected to the jury's viewing of the child pornography evidence in his case as it was prejudicial to him.  The Court notes that Salvá-Morales reason to be before a jury was precisely the one count indictment in which he was charged with possession of child pornography.  As such it is the government's obligation, in order to prove its case, that it present the evidence of the child pornography found in his possession.  If the Court were not to allow such evidence it would be impeding the government from meeting its burden of proof.

Federal Rule of Evidence 403 allows exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.  In balancing the scales of Rule 403, it is important to note that only "unfair" prejudice is to be avoided, as "by design,

CIVIL 12-1969CCC                    11

all evidence is meant to be prejudicial." United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000).

The First Circuit has made it clear, precisely in child pornography cases, that even with the offer of a stipulation as to the images of child pornography, the government has a right to "make full presentation of the crime currently charged." U.S. v. Morales-Aldarondo, 524 F.3d 115, 120 (1st Cir. 2008). Such was the case of Salvá-Morales. There is no doubt that the government had a right to fully present its case and it did so. The trial judge's task is to prevent unfair prejudice to the accused. The Court is not required to scrub the trial clean of all evidence that may have an emotional impact, where the evidence is "part of the Government's narrative." United States v. Dean, 135 F.Supp. 2d 207, 209-10 (D. Me. 2001). Petitioner's second claim of ineffective assistance of counsel is also DENIED.


**D.    Ineffective assistance of counsel for failing to present "available" and "crucial" defenses**.

Petitioner also raised in his Petition, as an attachment, that trial counsel was ineffective for he failed to present a "full defense" which would have consisted of (1) evidence that during the relevant period more than a hundred persons had direct access to his computers and (2) available evidence which would have impeached that presented by the government as to the time when some of the downloading of the illegal images occurred. He also imputes error to appellate counsel for not raising trial counsel's omissions.

The record reflects that trial counsel did present witnesses, specifically Julio Román-Encarnación, Lourdes Díaz-Medina, Sergio Torres-Díaz, Alfredo S. Rosa-Monción and José Bonilla, who all testified about their visits to petitioner's business, the specific hours in which they were at the shop and the fact that they could use petitioner's personal computer because it was within everyone's reach as well as other computers at the facility.

CIVIL 12-1969CCC                                12

They gave details regarding the times in which they were present and how they would use the computers at petitioner's repair shop.  Some of these witnesses were petitioner's students who testified that they would go there about assignments or to acquire experience on computer repairs.  The recurrent theme was that not only they but countless other persons allegedly had access to the machines at the workshop and that Mr. Salvá encouraged them to use the computers.  Additionally, he presented the testimony of a forensic examiner in computers (NK examiner).  There was no ineffective assistance of counsel in the presentation of evidence in support of petitioner's theory that there were multiple users that could have accessed his and other computers.

As a separate grounds in support of his ineffective assistance claim, petitioner represented by counsel filed on October 3, 2013 a Supplement (docket entry 8).  There he makes reference to "recent disclosures made by Edward J. Snowden regarding the illegal methods used by N.S.A. in obtaining confidential information from U.S. citizens like Mr. Candido Salvá-Morales."  Id., at p. 1.  Without providing any factual basis, petitioner argues at page 5 that " [t]here is reason to believe that ICE (U.S. Immigration and Customs Enforcement) obtained Petitioner's name from N.S.A. sources" and that "all the evidence used at trial against Mr. Salvá-Morales was the fruit of the poisonous tree, the N.S.A. illegal search."  The entire Supplement (docket entry 8) is an exercise in speculation and a suppression motion raised post-trial/appeal.  Petitioner's supplemental Petition for relief (**docket entry 8**) is, therefore, DENIED.

### III.      CONCLUSION

For the reasons stated, petitioner Cándido Salvá-Morales' Motion Under 28 U.S.C. § 2255 (**docket entry 1**) is DENIED.  Furthermore, petitioner's request for an evidentiary hearing is also DENIED.

CIVIL 12-1969CCC                                    13

       Based upon the above reasoning, no certificate of appealability should be issued in
the event that petitioner files a notice of appeal, because there is no substantial showing of
the denial of a constitutional right within the meaning of Title 28 U.S.C. § 2253(c)(2).
Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029 (2003).

       SO ORDERED.

       At San Juan, Puerto Rico, on December 17, 2013.


                                          S/CARMEN CONSUELO CEREZO
                                          United States District Judge